**TISCH FAMILY FOUNDATION, INC.,**
Plaintiff,

v.

**TEXAS NATIONAL PETROLEUM CO.,**
Defendant.

Civ. A. No. 2895.

United States District Court,
D. Delaware.

Jan. 14, 1972.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and William E. Wright, Houston, Tex., for plaintiff.

David F. Anderson, of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This case involves a suit by Tisch Family Foundation, Inc., (The Foundation), a Florida corporation, against Texas National Petroleum Co., (Texas National), a dissolved Delaware corporation. The suit arose subsequent to the dissolution of Texas National when the Foundation sought to recover from Texas National the value of eighty stock warrants. At the time of the dissolution, the plaintiff owned the eighty stock warrants but had not exercised them so as to participate in the proceeds of the dissolution. Alleging that Texas National failed to notify it of the proposed dissolution, the plaintiff claimed that the defendant had breached a contractual duty to provide notice of the dissolution and the plaintiff was therefore entitled to damages by reason thereof.

In September, 1970, the case was tried to the Court without a jury. The Court found for the plaintiffs in the principal amount of $32,295.20.[1] Subsequently, the parties could not agree as to the proper amount of interest to be awarded and the case is presently before the Court concerning the question of whether the plaintiff is entitled to interest for the period between the accrual of the plaintiff's claim and the judgment, and whether the plaintiff is entitled to post-judgment interest.[2]

---

1. The Court's decision is set forth as Findings of Fact and Conclusions of Law, D.C., 326 F.Supp. 1128 (1971).

2. This Court will not discuss post-judgment interest since this is governed by 28 U.S.C. § 1961. "Interest shall be allowed on any money judgment in a civil case recovered in a district court."

■ The threshold issue confronting the Court is which state law governs the question of the right to recover prejudgment, or moratory interest. This is a diversity suit on a contract to be performed in another state and concerns a question of performance of that contract. Under Delaware conflict of law rules, the case, including the measure of damages, must be decided in accordance with the state law of the place of performance. Stentor Electric Manufacturing Co. v. Klaxon Co., 125 F.2d 820 (3rd Cir.1942) aff'ing 30 F.Supp. 425, 432–435 (D.Del.1939); and Canadian Industrial Alcohol Co. Ltd. v. Nelson, 8 W. W.Harr. 26, 38 Del. 26, 58, 188 A. 39, 53 (Del.Sup.Ct.1936). In Delaware, the recovery of moratory interest is a matter of substantive law, and since this suit involves the issue of performance of contractual obligations, the availability of moratory interest must be determined under the law of the place of performance. Stentor Electric, supra, 125 F.2d at 824, see also Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F. 2d 541, 552, 553 (5th Cir.1968); Smith v. Onyx Oil and Chemical Co., 218 F.2d 104 (3rd Cir.1954); and William Whitman Co., Inc. v. Universal Oil Products Co., 125 F.Supp. 137, 172–173 (D.Del. 1954).

■ The contract at issue involved performance in both Texas and New York. In suits for breach of contract prejudgment interest is recoverable as a matter of law in both New York and Texas from the date the damages could be ascertained.[3] In Texas, interest is recoverable at the legal rate, or 6%,[4] and in New York, interest for example was recoverable at the following rates: pre-June 30, 1968—6%; June 30, 1968–February 15, 1969—7.25%; February 16, 1969 to April 22, 1970—7.5.%[5] Thus, the only distinction between the two states is the actual rate of interest involved, and whichever state law is determinative, the plaintiff is entitled to moratory interest from the date at which the damages were ascertainable until the date of judgment.

Arguing that the dominant place of performance was New York, the plaintiff contends that reference must be made to New York law. The plaintiff cites several factors to support this contention: the notice covenant in the stock warrant agreements embodies an obligation to supply notice in New York; the receipt of the distribution payment upon dissolution would be at the plaintiff's record address in New York; the warrant contract was formulated in New York upon the plaintiff's purchase therein; and the defendant offered its warrants to the general public in several states and must have intended to have its performance obligations governed by the laws of these several states. In addition, the plaintiff claims that recent developments in conflict of law rules have adopted a "center of gravity theory" under which a court will examine the operative facts pertaining to the contract issues and apply the law of the state with the "most significant rela-

3. New York: N.Y. CPLR, Section 5001; Julien J. Studley, Inc. v. Gulf Oil Corporation, 425 F.2d 947, 949, 950 (2nd Cir. 1969); Stentor Electric, supra; Earnest v. Donald Deskey Assoc., Inc., 312 F.Supp. 1312, 1313 (S.D.N.Y.1970); and Prager v. New Jersey Fidelity & Plate Glass Insurance Co., 245 N.Y. 1, 5–6, 156 N.E. 76, 77 (N.Y.Ct. of App. 1927).

Texas: Vernon's Annotated Texas Civil Statutes, Article 5070; Davidson v. Clearman, 391 S.W.2d 48 (Sup.Ct.Texas 1965); Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (Sup.Ct.Texas 1897); see also Crofford v. Armstrong, 342 S.W.2d 607 (Tex.Civ.App.1961); Texas Co. v. State, 154 Tex. 494, 281 S.W.2d 83 (Sup. Ct.Texas 1955).

4. Davidson v. Clearman, supra.

5. The New York rate is authorized by statute, but fluctuates by virtue of statutory reference to the New York Banking Board's prescribed rate. N.Y. General Obligations Law, § 5–501 (McKinney's 1969 Supp.), see also Earnest v. Donald Deskey Assoc., Inc., supra, 312 F.Supp. at 1314.

tionship" to the parties and operative facts.[6]

The Delaware Courts have not as yet adopted the center of gravity rule. However, even if the plaintiff's argument is correct and Delaware Courts would follow the recent trend, the result would be no different since under either conflict rule Texas was the place of performance of the defendant's agreement. The contract provides that Texas National was under an obligation to mail notice of the dissolution and record date to its stock warrant holders. Thus, by the specific contractual provisions, the defendant's obligations and breach involved actions to be undertaken in Texas —the proper addressing and mailing of appropriate notice. Since their agreement dictates the manner by which notice shall be given, Texas National would have sufficiently performed its contractual obligations by mailing the notice to the plaintiff.[7] See 58 Am.Jur.2d, Notice § 24.

The result is the same under a "center of gravity theory" since the most significant aspects of the warrant arrangements, the plaintiff's injury, the issuance of stock pursuant to the warrant, the mailing of notice of dissolution, and the actual disbursement subsequent to dissolution, all would have occurred in Texas.

Acceptance of the plaintiff's argument that New York was the place of performance would place a corporation issuing warrants to the public in the anomalous position of drafting a document which might be interpreted under the law governing construction or performance by the law of fifty different jurisdictions. The cases relied on by the plaintiff in which the place of performance was the situs of delivery were contracts to deliver merchandise to a specific designated location, and are easily distinguishable from the warrant agreement at issue here where the warrants are subject to sale on the open market and the buyer's residence subject to repeated change.[8]

■ The defendant contends that the Court should exercise its discretion and reduce or deny the plaintiff's request for interest since there were numerous delays during the action which were attributable to the plaintiff. None of the three cases relied on by the defendant[9] dealt with Texas law, and two of the three involved situations in which allowance of interest was in the discretion of the court.[10] Since the Texas courts have frequently reiterated their position that recovery of prejudgment interest is necessary if the plaintiff is to be made whole,[11] this Court concludes that it has no authority to reduce or deny the recovery of interest.

Further, even if it does possess such authority, the Court concludes that there is no justification for reducing the amount of interest because of any delay attributable to the plaintiff.[12]

6. Plaintiff's Brief, p. 12, Proposed Restatement 2d, Conflict of Laws, § 332, see Fleet Messenger Service, Inc. v. Life Insurance Co. of North America, 315 F.2d 593 (2nd Cir. 1963), and Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (N.Y.Ct. of App.1954).

7. See Court's Findings of Fact and Conclusions of Law, p. 12, Conclusion of Law 4, footnote 5.

8. Louis-Dreyfus v. Paterson Steamships, Ltd., 43 F.2d 824 (2nd Cir. 1930) and Bank of Cal. N. A. v. International Mercantile Marine Co., 64 F.2d 97 (2nd Cir. 1933) cert. den. 290 U.S. 649, 54 S.Ct. 66, 78 L.Ed. 563 (1933).

9. E. M. Fleischmann Lumber Corp. v. Resources Corp. International, 114 F. Supp. 843 (D.Del.1953); Speed v. Transamerica Corp., 135 F.Supp. 176 (D.Del. 1955) reversed as to the question of interest on which the defendant relies, 235 F. 2d 369, 374 (3rd Cir. 1956); and The James McWilliams, 240 F. 951 (2nd Cir. 1917).

10. Speed, supra, and McWilliams, supra.

11. See footnote 2.

12. Considerable portions of the delay in prosecuting this case are attributable to the withdrawal of counsel and the death of two of the plaintiff's attorneys of rec-

■ Although the damages occurred over a period of time, the plaintiff has indicated a willingness to limit its request for interest subsequent to April 26, 1963, the date of the final distribution under the Texas National liquidation and on which all of the plaintiff's damages could be ascertained. Therefore, the plaintiff is entitled to recovery of pre-judgment interest at 6% on $32,295.20 from April 26, 1963 until the judgment, and judgment will be entered accordingly.

Submit order.

ord. Finally, as the Third Circuit Court stated in Speed v. Transamerica Corp. supra, " . . . however it was caused, the delay harmed only the plaintiffs.

[The defendant], on the other hand, was benefited. For it was able to retain for its own use until now [the funds at issue] . . . ."